

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 10, 2021**

United States Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 21-31096-SGJ-7** |
| **INTELLIGENT SURVEILLANCE** | § | |
| **CORPORATION** | § | |
| | § | **Chapter 7** |
| Alleged Debtor. | § | |

_____

## MEMORANDUM OPINION AND ORDER DENYING ALLEGED DEBTOR'S MOTION TO DISMISS INVOLUNTARY CASE

This constitutes the court's findings of fact, conclusions of law, and ruling[1] with regard to the continued hearing held on December 6, 2021 ("Hearing") on the Alleged Debtor's Motion to Dismiss Case [DE # 10].

_____

[1] The court has jurisdiction in this contested matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding over which this court can issue final orders pursuant to 28 U.S.C. § 157(b).

## I. **Background**

By way of background, an involuntary Chapter 7 bankruptcy petition ("Involuntary Petition") was commenced against Intelligent Surveillance Corporation (the "Alleged Debtor") on June 11, 2021, pursuant to Bankruptcy Code Section 303(a), by four petitioning creditors (the "Four Original Petitioning Creditors"). The Alleged Debtor timely contested the Involuntary Petition, pursuant to Fed. R. Bankr. Proc. 1011(a) & (b), not by filing an Answer *per se*, but by filing a "Motion to Dismiss Involuntary Petition Pursuant to 11 U.S.C. §§ 303(b) and 305" [DE # 10] in which it stated that it would show that the claims of the Four Original Petitioning Creditors were "subject to bona fide disputes as to amount and liability" and that the filing was also made in bad faith. The Alleged Debtor's accompanying Brief in Support [DE #11] elaborated that it was invoking a Rule 12(b)(1) and (6) "lack of standing" argument because the purported claims of the Four Original Petitioning Creditors were contingent as to liability or the subject of a bona fide dispute." *Id*. at p. 4.

The court held a status conference on the Involuntary Petition on July 27, 2021, and, after being apprised of the posture of the matter, ruled that it would conduct an evidentiary hearing (with evidence mostly presented by written proffers, to expedite the proceedings) to determine whether the Four Petitioning Creditors had standing to file the Involuntary Petition—*i.e.,* to determine whether they each were holders of claims that were not contingent as to liability or the subject of a bona fide dispute. Such hearing was scheduled for September 15, 2021.

One other procedural matter that was addressed at the status conference pertained to Fed. R. Bankr. Proc. 1003(b). That rule states that "[i]f the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims,

and the amounts therefor. If it appears that there are 12 or more creditors as provided in Section 303(b) of the Code, the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon."

Counsel for the Four Original Petitioning Creditors urged at the status conference that the Alleged Debtor should be required to promptly file its list of creditors pursuant to that rule—even though this was not a situation in which fewer than three creditors had filed the Involuntary Petition, and despite the fact the Alleged Debtor technically had not yet filed an "answer" that averred "the existence of 12 or more creditors." The Four Original Petitioning Creditors' argument essentially was that, in the event that: (a) at least one, but less than three, of the Four Original Petitioning Creditors were held to have standing, and (b) the Alleged Debtor ultimately averred that it had 12 or more creditors, there might be other creditors of the Alleged Debtor who were interested in joining in the Involuntary Petition. *See* Bankruptcy Code Section 303(c), which states that "[a]fter the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section." In response to the request, the Alleged Debtor initially agreed, and the court ordered the Alleged Debtor to file the list of creditors. *See* DE # 19. But, after the status conference, the Alleged Debtor had second thoughts and filed a Motion for Limited Protective Order and Brief in Support, arguing that it was actually premature for it to be ordered to file the creditor list contemplated under Rule 1003(b). *See* DE # 21. Thereafter, the Four Original Petitioning Creditors objected to this Motion for Limited Protective Order. *See* DE # 26.

This court balanced various considerations at that point, among them that: (a) an answer

had technically not yet been filed to trigger Rule 1003(b); but (b) petitioning creditors are generally allowed to seek to convince other creditors to join in an involuntary petition; and (c) a bankruptcy court, pursuant to Fed. R. Bankr. Proc. 1013(a), has a duty to "determine the issues of a contested petition at the earliest practicable time and forthwith to enter an appropriate dispositive order." On balance of these competing considerations, this court ultimately granted the Alleged Debtor a limited protective order and permitted the Alleged Debtor to file the creditor list under seal with only attorneys being allowed to see the list until the court ruled on the Motion to Dismiss. The court believed this ruling was consistent with its case management authority to ensure orderly, fair, and efficient proceedings.

On August 17, 2021, the Alleged Debtor filed its list of creditors under seal. DE # 30. It reflected that the Alleged Debtor had 28 creditors, and the Alleged Debtor added notes indicating that six of those 28 creditors were disputed.

On September 15, 2021, the court held the originally scheduled hearing on the Alleged Debtor's Motion to Dismiss the Involuntary Petition. To be clear, the sole issue before the court on September 15, 2021, was the standing or qualification of the Four Original Petitioning Creditors that filed this case, pursuant to Section 303(b) of the Bankruptcy Code. After a full day of evidence and argument, the court ruled that only *one* of the Four Original Petitioning Creditors, Abacus Technologies, Inc. ("Abacus"), held a claim that was not contingent or the subject of a bona fida dispute. *See* DE ## 49, 52, & 53. As a result of this ruling, the court announced that there would need to be a further hearing on the Motion to Dismiss to adjudicate the issue of how many creditors the Alleged Debtor had (12 or more, or not) so as to determine if Abacus alone was sufficient pursuant to Section 303(b) so as to allow the Involuntary Petition to proceed further. At this point in time, all that existed on this point was a creditor list filed under seal. The court ordered that the

creditor list would be unsealed. DE # 52. The court also ordered that Abacus would be allowed to take discovery regarding the creditor list—it was not required to accept that list at face value. If at the subsequent hearing, the Alleged Debtor averred that it had 12 or more creditors (and it was so determined—as calculated pursuant to the dictates of Section 303(b)(2)) then, presumably, the court would be required to grant the Alleged Debtor's Motion to Dismiss. However, if it was determined that the Alleged Debtor had fewer than 12 creditors (as calculated pursuant to the dictates of Section 303(b)(2)), then the Motion to Dismiss would be denied, as Abacus alone could pursue the Involuntary Petition. A third scenario might come into fruition though: the Alleged Debtor might have 12 or more creditors, but other qualifying creditors might join Abacus as petitioning creditors.

Again, the Alleged Debtor's Creditor List reflected 28 Creditors (the "Creditors List"). DE # 100, Exhibit ATI-1.

## II.    The Continued Hearing on the Alleged Debtor's Motion to Dismiss on December 6, 2021.

This court held the continued Hearing on the Alleged Debtor's Motion to Dismiss on December 6, 2021. It soon became apparent at the Hearing that a fourth scenario had emerged—it appeared that there might be both: (a) fewer than 12 creditors (as calculated pursuant to the dictates of Section 303(b)(2)); and (b) at least three petitioning creditors since there were now newly joining petition creditors.

With regard to counting the creditors (pursuant to the dictates of Section 303(b)(2)), the calculation appeared to work as follows. First, the Alleged Debtor and Petitioning Creditors stipulated that of the 28 creditors on the Alleged Debtor's Creditor List, 22 were not disputed (thus, six on the list—the last six—should not be counted for purposes of the Section 303(b)(2) calculation). Second, of the 22 undisputed creditors that were left, it was stipulated that 19 of them

had received postpetition payments on account of their prepetition claims. Counsel for the Petitioning Creditors stated that this meant there were only three creditors that counted for purposes of the Section 303(b)(2) calculation.

With regard to the three newly joining petitioning creditors ("Newly Joining Petitioning Creditors"), when added with Abacus (the sole surviving creditor of the Original Four Petitioning Creditors), this brought the number of petitioning creditors back up to four. However, by the time of the Hearing, two of these Newly Joining Petitioning Creditors were seeking to withdraw as petitioning creditors (which, if permitted, would have brought the number of petitioning creditors back down to two).

It soon became clear that the issues for the court at this juncture were going to be mainly legal. Was the court required to count the number of creditors that existed, for purposes of Bankruptcy Code Section 303(b)(2), as the number that existed as of the Petition Date (*i.e.,* June 11, 2021) or the number that existed as of the date of the Hearing (*i.e.,* December 6, 2021) (which would have brought the number down to three)? Additionally, was the court required to allow two of the Newly Joining Petitioning Creditors to withdraw? This latter question might not ultimately matter if the Alleged Debtor was determined to have fewer than 12 creditors. But, in any event, the Petitioning Creditor Abacus argued that these Newly Joining Petitioning Creditors should not be allowed to withdraw, because the Alleged Debtor—according to Abacus's interpretation of the evidence—had "paid off" these Newly Joining Petitioning Creditors to get them to drop their pursuit of the Involuntary Petition.

The court heard testimony from just one live witness on December 6, 2021: the Chief Executive Officer ("CEO") of the Alleged Debtor, David Buschhorn. The court admitted several exhibits. The parties stipulated that 19 of the original 28 creditors had received some postpetition

payments on their prepetition claims (and four of those had also received prepetition payments on their claims within 20 days of the Petition Date).

### III. Conclusions of Law.

A. Issue #1: Calculating the Number of the Alleged Debtor's Creditors for Purposes of Section 303(b).

Generally speaking, under Bankruptcy Code Section 303(b)(1) and (2), if an alleged debtor has 12 or more creditors, then at least three petitioning creditors are required to properly commence an involuntary bankruptcy petition, but if there are fewer than 12 creditors, it only takes one petitioning creditor. There are some caveats. First, a caveat as to the petitioning creditors is that each one must hold a claim that is not contingent as to liability or the subject of a bona fide dispute (sometimes courts refer to this as a "qualifying creditor"), and their claims must collectively aggregate $16,750 in unsecured amount. Second, a caveat for purposes of calculating the "12 or more" question is that the court must exclude creditors who are employees, insiders, and any "transferee of a transfer that is voidable under Bankruptcy Code section 544, 545, 547, 548, 549, and 724(a)." The rationale for excluding from the calculation these transferees of voidable transfers is that they would probably (similar to employees and insiders) have a bias against a bankruptcy case going forward, since they would be subject to having their payments returned. Noteworthy here is the reference to Section 549, in particular, in Section 303(b)(2). Section 549, in pertinent part, permits a trustee to avoid a transfer of property of the estate that occurs during the so called "gap period" between when an involuntary petition is filed and an order for relief is later entered, if it was a payment on account of a prepetition debt that was either authorized only under Section 303(f) or that was not authorized by the court. To be clear, Section 303(f) generally allows an alleged debtor to use its property of the estate unfettered during the gap period (and

therefore pay creditors) but, if an order for relief is ultimately entered, those payments on account of prepetition debt will be avoidable pursuant to Section 549.

The primary issue this court must address is the following: For purposes of calculating numerosity pursuant to Section 303(b), and determining whether 12 or more creditors of the type contemplated in Section 303(b) exist here, does this court look at the number of creditors that existed as of the petition date or as of the date of the hearing (assuming there is a different number)? Perhaps the better way to state this is what effect does the court give the postpetition payments to these creditors?

The general rule is that the number of creditors is to be determined as of the date the petition was filed, rather than the date of the hearing. *E.g., In re Norris*, 183 B.R. 437, 452 (Bankr. W.D. La. 1995); *In re Garland Coal & Mining Co.,* 67 B.R. 514, 519 (Bankr.W.D.Ark.1986); *In re Skye Marketing Corp.*, 11 B.R. 891 (Bkrtcy.E.D.N.Y.1981); *In re Blaine Richards & Co., Inc.*, 10 B.R. 424 (Bkrtcy.E.D.N.Y.1981); *Matter of International Teldata Corp.,* 12 B.R. 879 (Bkrtcy.D.Nev.1981). However, when payments are made to creditors after the petition date, on account of their prepetition claims, those payments are avoidable pursuant to Section 549, and therefore those creditors should not be counted. Those creditors get subtracted from determining the alleged debtor's number of creditors for purposes of Section 303(b)(2). As the leading bankruptcy treatise explains it, "[o]therwise, a debtor could pay off its most insistent creditors to fend off a petition." 2 COLLIER ON BANKRUPTCY ¶ 303.12.[4] (15th ed. 1984) (Supp. 2020). The treatise elaborates: "If the issue is numerosity, an alleged debtor's postpetition payments will not help the debtor to defeat an involuntary petition. If anything . . . paying them to exclude them will help rather than hinder the single petitioning creditor. From the single petitioning creditor's perspective, the fewer the creditors the better." *Id.* at 303-41.

The Alleged Debtor made a somewhat odd argument that Abacus essentially cannot proceed under Section 303(b)*(2)* now, when it first took the position that Section 303(b)*(1)* applied. This seems to be akin to a preclusion argument, suggesting that since Abacus first filed the Involuntary Petition with the Original Four Petitioning Creditors, under the assumption that three or more petitioning creditors were needed because there were 12 or more creditors overall, it now cannot argue that there are fewer than 12 creditors. There is no authority of which this court has been made aware that remotely suggests that petitioning creditors select either option (b)(1) or (b)(2) when they file an involuntary petition and are thereafter bound by this. Subsections (b)(1) and (b)(2) of Section 303 are not options or elections. They simply define the set of circumstances for when three petitioning creditors are needed to properly pursue an involuntary petition versus merely one.

The Alleged Debtor made another unexpected argument during closing arguments. Counsel for the Alleged Debtor argued that the Petitioning Creditors did not prove that the postpetition payments to 19 creditors on account of their prepetition debts were made from "property of the estate" and, thus, did not prove the payments were voidable under Section 549 and must be subtracted out for purposes of the Section 303(b)(2) calculation. The Alleged Debtor argues that the Petitioning Creditors bore the burden of proof to establish the payments were made from property of the estate and the Petitioning Creditors put on no evidence of this.

At the outset, the court determines that this argument was disingenuous because the CEO for the Alleged Debtor testified about the postpetition payments stating that "we" paid down about $143,000 in total to creditors postpetition and that this was possible because "we" had just received $500,000-$600,000. The witness never suggested that the funds were anything other than property of the Alleged Debtor. He did not testify in a way that would have caused the Petitioning Creditors

to cross-examine him on the source of the funds or otherwise explore the evidence in this regard. Moreover, the CEO for the Alleged Debtor also testified from the Alleged Debtor's own Exhibit 31, which was represented to show payments that the Alleged Debtor had made to creditors on the Creditors List over the past few months. Exhibit 31 shows designations such as "ACH" and "W/T" for the payments, and the CEO's testimony is interpreted by this court to have been a representation that the Debtor made these payments from its own funds.

Additionally, the Alleged Debtor misunderstands how the burden of proof works on this point. It is generally true that once an alleged debtor files its list of creditors pursuant to Rule 1003(b) naming 12 or more creditors, a sole petitioning creditor bears the burden of showing that the alleged debtor has less than 12 creditors (as required when there is only a sole petitioning). *In re Smith*, 415 B.R. 222, 229 (Bankr. N.D. Tex 2009) (and cases cited therein). However, when the specific issue of postpetition payments on account of prepetition debt comes into play, Bankruptcy Rule 6001 places on the alleged debtor (*i.e.,* any entity asserting the validity of a transfer under section 549) the burden of proof to show payments are ***not*** avoidable. *In re Rimell*, 111 B.R. 250, 256 (Bankr. E.D. Mo. 1990). To be clear, the Alleged Debtor here stipulated that 19 of its 22 undisputed creditors on its Creditor List received postpetition payments on account of prepetition debts. At that point, any "burden" of the Petitioning Creditors was met to show less than 12 creditors of the kind described in Section 303(b)(2) existed. The burden would have then shifted to the Alleged Debtor to show the postpetition payments would not be avoidable pursuant to Section 549 and, thus, should not result in the creditor-transferees being subtracted when counting up creditors. The Alleged Debtor put on no evidence to suggest the payments might not be avoidable and, in fact, created the impression that the 19 creditors were paid from property of the Alleged Debtor.

Finally, Mr. Buschhorn testified that the Alleged Debtor had a few additional creditors that did not make it onto the Alleged Debtor's Creditors List. These included: (a) an $850,000 loan due February 2022 from a "Beecave Capital" (this noteholder was represented by Mr. Buschhorn to be one of the Debtor's largest shareholders and its principal is on the board of directors of the Alleged Debtor; it would not count under the Section 303(b)(2) calculation as the creditor would appear to be an insider based on this testimony); (b) two or three credit card merchants (these credit cards were represented to be in the name of individual principals of the Alleged Debtor, who use them for business expenses, and the Alleged Debtor pays the credit card bills or reimburses the principal; these would not be creditors of the Debtor or, at most, the individual employees of the Alleged Debtor would be creditors of the Alleged Debtor as a result of this practice—and employees do not count under Section 303(b)(2)); (c) an EIDL government small business loan for $149,900 that is not due for a couple of years; (d) a PPP government loan in the amount of $387,000 which the Alleged Debtor anticipates will be forgiven; (e) a landlord that is current; and (f) some utilities that are current.

It appears to this court that, at most, the EIDL and PPP loan might count as creditors, for purposes of the Section 303(b)(2) calculation. Some case law holds that small recurring debt (such as rent and utilities—assuming that they are current) should not be counted for purposes of the Section 303(b)(2) calculation. There is some split of authority on this. *See Denham v. Shellman Grain Elevator, Inc.*, 444 F.2d 1376 (5th Cir. 1971); *In re Corrline*, 516 B.R. 106, 152-53 (Bankr. S.D. Tex. 2014). *But see In re Okamoto*, 491 F.2d 496 (9th Cir. 1974); *Theis v. Luther*, 151 F.2d 397 (8th Cir. 1945), *cert. denied*, 327 U.S. 781 (1946). Even if small and recurring creditors, which are mostly or entirely current, should be counted, the evidence presented reflected that they would not bring the Section 303(b)(2) calculation of creditors up to 12 or more.

In summary, applying the Section 303(b)(2) calculation to the evidence before the court, the Alleged Debtor has fewer than 12 creditors. Since the court holds that one must subtract from the Creditors List: (a) the disputed creditors (of which there were six), (b) the creditors who received postpetition payments on account of prepetition claims (of which there were 19), there are only three creditors that count for purposes of Section 303(b)(2). If one adds in the omitted EIDL and PPP loans, that brings the number up to five. This means the Alleged Debtor's Motion to Dismiss the Involuntary Petition must be denied, since the court has already held, after the September 15, 2021 hearing, that one of the Four Original Petitioning Creditor, Abacus, had standing to be a petitioning creditor.

*B. Issue #2: Can Petitioning Creditors Withdraw in this Context?*

Finally, as noted earlier, two of the Newly Joining Petitioning Creditors have sought to withdraw from the Involuntary Petition. The Alleged Debtor argues that this should be permitted, and that this would leave an insufficient number of petitioning creditors pursuant to Section 303(b)(1), which requires three or more petitioning creditors where a debtor has 12 or more creditors. In other words, there would only be two petitioning creditors left. The remaining Petitioning Creditors (which would be Abacus and GradConn, if the court accepts the withdrawals) argue that the withdrawals must not be permitted because the Alleged Debtor paid them postpetition to deter them from continuing to be petitioning creditors. They further argue that an alleged debtor may not pay off petitioning creditors to the detriment of other creditors as a way of avoiding an involuntary petition.

***At this point, this legal issue appears to be moot, since the court has determined that there are fewer than 12 creditors pursuant to Section 303(b)(2)***—thus, only one petitioning creditor is necessary—but the court will nevertheless address the issue in case some higher court

disagrees with this court on the first part of its ruling regarding the number of creditors.

The Newly Joining Petitioning Creditors that sought to withdraw from being petitioning creditors were Factory Outlet Tooling [DE # 94] and PM Industrial Supply Co. Each of these Newly Joining Petitioning Creditors had joined into the Involuntary Petition on October 7, 2021, with Factory Outlet Tooling representing that it had a $6,412.77 unsecured claim and PM Industrial Supply representing that it had a $7,156.75 unsecured claim. DE # 56.

With regard to Factory Outlet Tooling, the evidence reflected that shortly before the June 11, 2021 Petition Date, the Alleged Debtor and Factory Outlet Tooling entered into a settlement and agreed judgment in Dallas County state court litigation. Moreover, Alleged Debtor's Exhibit 31 reflected payments to Factory Outlet Tooling on a monthly basis in the amount of $1,302 per month, starting prepetition (May 4, 2021, June 4, 2021, and continuing monthly thereafter) which seems consistent with a prepetition settlement and not a situation of paying them off after Factory Outlet Tooling joined in the Involuntary Petition.

With regard to PM Industrial, the evidence reflected that the Debtor started paying it $1,192 per month beginning on September 7, 2021, October 7, 2021, and then November 2, 2021, which similarly seems inconsistent with paying them off as a result of them joining in the Involuntary Petition.

Interestingly, though, the Alleged Debtor's Exhibit 31 (confirmed by Mr. Buschhorn's testimony) does seem to show a pattern of the Alleged Debtor beginning to pay down creditors soon after the Involuntary Petition was filed. As alluded to earlier, this can yield both negative and positive consequences for an alleged debtor. On the one hand, it can make creditors unlikely to join in an involuntary petition. On the other hand, it reduces the number of creditors who count for purposes of the Section 303(b)(2) calculation, which can create a situation where only one

petitioning creditor is needed.

There is case law that supports the petitioning creditor, Abacus's argument that withdrawal should not be permitted: *In re Barkats*, 2015 WL 557306 (Bankr. D.C. Feb. 9, 2015). In that case, an alleged debtor moved to dismiss an involuntary case on the basis that it had paid off two of the four petitioning creditors' claims and that this, thus, left an insufficient number of petitioning creditors pursuant to Section 303(b)(1), which requires three or more petitioning creditors where a debtor has 12 or more creditors. The court ruled that the motion must be denied because a debtor may not pay off petitioning creditors to the detriment of other creditors as a way of avoiding an involuntary petition. The court cited numerous cases under the Bankruptcy Act including a case from the Fifth Circuit from 1924. *J.W. Ward Farming Co. v. Lowery (In re J.W. Ward Farming Co.)*, 295 F. 60, 62 (5th Cir. 1924).

It appears to this court that the holding of *Barkats* and other cases it cites are not simply about making a showing that an alleged debtor paid off petitioning creditors to essentially buy off their cooperation and eliminate their standing. In other words, while collusion is a concern, this court does not believe a specific showing of collusion is required in deciding that a petitioning creditor ought not to be allowed to withdraw. As discussed in *In re Antar*, No. 12–13288–AJC, 2013 WL 1622217, at *6 (Bankr.S.D. Fla. Apr. 15, 2013):

> [A] subsequent withdrawal by one petitioning creditor does not render an involuntary petition insufficient for not having the requisite number of creditors. *In re Carvalho Industries, Inc.*, 68 B.R. 254, 256 (Bankr.D. Or.1986) (denying debtor's motion for dismissal or summary judgment after a petitioning creditor withdrew due to a settlement with the debtor, where the debtor did not contend that the petitioners were ineligible to be petitioning creditors for any reason other than post-petition payment or settlement); *In re Faberge Restaurant of Florida, Inc.*, 222 B.R. 385 (Bankr.S.D.Fla.1997) ("[i]t is well settled that the fact that a creditor is paid post-petition and withdraws his joinder in an involuntary case does not render the petition insufficient for lack of sufficient number of eligible creditors under § 303(b)(1).") (quoting *In re Sjostedt*, 57 B.R. 117, 120

-14-

(Bankr.M.D.Fla.1986)); *In re Claxton*, 21 B.R. 905, 908–09 (Bankr.E.D.Va.1982) (determining the sufficiency of the involuntary petition by looking only to the petitioners' status as creditors on the date the original petition was filed, and further stating that "[i]mportant policy considerations underlie this rule, which is aimed at avoiding collusion between petitioners and the debtor. An involuntary petition protects all creditors of the debtor, not only those presently before the court.") (citing *In re All Media Properties, Inc.*, 5 B.R. 126, at 144–145 (Bankr.S.D.Tex.1980), aff'd, 646 F.2d 193 (5th Cir.1981)); *Sheehan & Egan, Inc. v. North Eastern Shoe Co.,* 47 F.2d 487, 489 (1st Cir.1931).

This court agrees with this reasoning. The concern is about *potential* collusion, but there need not be a finding of collusion *per se*. On balance, this court concludes that it should not accept the withdrawal of any of the Newly Petitioning Creditors such that the court holds there are four petitioning creditors here—a sufficient number to sustain the Involuntary Petition, as amended, if a higher court rules that this court erred in concluding that there are fewer than 12 creditors.

Accordingly, the Motion to Dismiss is **DENIED**. It is so **ORDERED.**

**IT IS FURTHER ORDERED** that the Alleged Debtor shall now have 21 days to file an Answer if it so chooses contesting the Involuntary Petition. The only issue at this point would be whether the Alleged Debtor is generally paying its debts as they become due. This court can take judicial notice of what it has already heard from the witness David Buschhorn and Exhibit 31. The court will consider whatever supplemental, relevant evidence that the parties choose to present. If the Alleged Debtor does not file an answer contesting the Involuntary Petition further, the court will forthwith enter an Order for Relief.

#### #### END OF MEMORANDUM OPINION AND ORDER ####